IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHIRLEY LIGHTFOOT and DONALD R. HONE, individually and on behalf of all others similarly situated, | : : : : | HONORABLE JEROME B. SIMANDLE Civil No. 12-773 (JBS/JS) |
| Plaintiffs, | : | **OPINION** |
| v. | : : | |
| ARKEMA, INC. RETIREMENT BENEFITS PLAN, | : : : | |
| Defendant. | : : | |

APPEARANCES:

Lisa J. Rodriguez, Esq.
Nicole M. Acchione, Esq.
TRUJILLO RODRIGUEZ & RICHARDS, LLC
258 Kings Highway East
Haddonfield, NJ 08033
     - and -
Christopher A. Hoffman, Esq.
Douglas R. Sprong, Esq.
KOREIN TILLERY, LLC
One U.S. Bank Plaza
505 N. 7th Street, Ste. 3600
St. Louis, MO 63101
     Counsel for Plaintiffs

Matthew V. Delduca, Esq.
William Gibson, Esq.
PEPPER HAMILTON LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08543
     Counsel for Defendant

**SIMANDLE**, Chief Judge:

# I.  INTRODUCTION

This class action alleges that Defendant Arkema, Inc.

Retirement Benefits Plan ("Arkema Plan"), which is a defined benefit pension plan, violates the Employee Retirement Income Security Act ("ERISA") because the Plan provides cost-of-living adjustments ("COLAs") to pensioners who receive monthly annuity payments but excludes the equivalent value of the COLAs from lump sum distributions to pensioners electing a one-time payment. Before the Court are Plaintiffs' motion for partial summary judgment [Docket Item 26] and Defendant's cross-motion for summary judgment [Docket Item 32].

Two threshold questions concern the Court: (1) whether this action is barred by the statute of limitations because the language contained in the plan and accompanying documents clearly repudiated Plaintiffs' claim that the value of COLAs are included in lump sum payments, and (2) whether it is appropriate to apply non-mutual offensive collateral estoppel in this case (namely, whether Defendant Arkema is in privity with the defendant in the prior case and whether it would be unfair to Defendant to give preclusive effect to the prior case decision). Because the Court finds this action is not time-barred and because the requirements for collateral estoppel have not been met, the Court will address the merits of these motions.

On the merits, the Court must determine whether COLAs are part of the "accrued benefit" under the Arkema Plan, within the meaning of ERISA, at 29 U.S.C. §§ 1002(23)(A) & 1054(c)(3). The

Court finds, for the reasons discussed herein, that the plan's accrued benefit is the annual benefit commencing at normal retirement age for annuitants. That benefit includes COLAs under the terms of the Arkema Plan, and, under ERISA, where a defined benefit plan chooses to offer a lump sum one-time distribution, pensioners who opt for lump sums must be given the actuarial equivalent of that benefit. In this case, that means lump sums must include the actuarial equivalent of the COLAs that are promised and provided to annuitants. Therefore, the Court will grant Plaintiffs' motion for partial summary judgment and deny Defendant's motion for summary judgment.

## II. Background

### A. Facts

The facts of this case are not in dispute. The Plaintiffs and class members[1] were employees of AtoHaas, a joint venture between the Rohm & Haas Company ("R&H") and Elf Atochem S.A. and participated in the Rohm & Haas Pension Plan ("R&H Plan"), a defined benefit pension plan. (Statement of Material Facts ("SMF") ¶¶ 1-2.)

---

[1] On November 7, 2012, the Court certified, by consent, a class pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B) and (b)(2). [Docket Item 25.] The class consists of: "All former participants in the Rohm and Haas Pension Plan who have received or are eligible to receive a lump sum distribution of their pension from the Arkema, Inc. Retirement Benefits Plan." Id. According to the Arkema Plan, this class contains 236 members. Id.

The R&H Plan offered pensioners two payment options: monthly annuities ("the normal form of payment") or a lump sum payment that would be "the Actuarial Equivalent value of the Participant's Accrued Benefit" under the plan. (SMF ¶¶ 3-4; Pl. Ex. A at ARKP_418-19).) The plan defines "Actuarial Equivalent" as "a benefit of equivalent actuarial value to the benefit that would otherwise have been provided to the Employee, determined on the basis of appropriate actuarial assumptions and methods set forth in Appendices A through D attached hereto." (Pl. Ex. A. at ARKP_383.) The plan defines "Accrued Benefit" as

> the portion of the Participant's Basic Amount of Normal Retirement Pension, expressed in terms of a monthly single life annuity beginning at or after his Normal Retirement Date, that has accrued as of any determination date in accordance with Article VII, plus in the case of a Participant identified thereon, the additional amount of monthly benefit specified on Schedule G.

(Id.) Neither Article VII nor Schedule G discusses COLAs. Instead, the R&H Plan contains a separate article on COLAs. Article XV, § 15.1 states: "any Participant age 60 or older who has retired from the Company, or any Contingent Annuitant or Beneficiary of an eligible Participant (or a Participant who would have been eligible except for age), who is receiving monthly payments, shall be entitled to an annual Cost-of-Living Adjustment as described below[.]" (Id. at ARKP_427) (emphasis added). The plan adds that the first COLA is "payable to the otherwise eligible Participant on the March 31st subsequent to

the year of retirement . . . ." (<u>Id.</u>) The plan then describes the method of calculating COLAs. (<u>Id.</u> at ARKP_427-28.)

In 1994, AtoHaas employees received a Summary Plan Description ("SPD") explaining pension benefits.[2] The SPD suggests in at least three places that an employee who elects the lump sum payment does not receive COLAs. On a page titled "HOW BENEFITS ARE PAID," in a section called "Lump Sum Payment (Alternative Option)," the SPD explains: "Under this option, the entire present value of your lifetime pension benefit is paid to you in a single lump sum. Neither you, nor anyone else, will receive any further benefits from the Pension Plan, including cost-of-living increases." (Declaration of William Gibson Ex. 1 [Docket Item 31-5] at ARK_370.) On a page entitled "COST-OF-LIVING ADJUSTMENTS," the SPD reiterates that "Cost-of-living adjustments are a special feature of the Pension Plan" and "[y]ou forego cost-of-living increases if you take a lump sum pension." (<u>Id.</u> at ARK_372.) The page also includes a section, "LUMP-SUM PENSIONS," which states that "[c]ost-of-living increases apply only to monthly pension benefits. They are not available if you

---

[2] Plaintiffs observe that there is no evidence in the record that the class members received the 1994 SPD. (Pl. Opp'n [Docket Item 36] at 13.) At oral argument, however, Plaintiffs' counsel conceded that it would be a fair inference that class members received the SPD because the employer was required to issue it. The Court's analysis does not turn on this fact, as we assume the Plaintiffs received the 1994 SPD for purposes of these cross-motions.

take your pension in a lump sum." (<u>Id.</u>) At the same time, the SPD states that "<u>the equivalent lifetime value of your pension is the same under all forms</u>. But the monthly amount you receive varies because some forms provide survivor benefits." (<u>Id.</u> at ARK_370) (emphasis added).

A series of corporate mergers and acquisitions resulted in Arkema, Inc., assuming the obligations of the R&H Plan. On June 4, 1998, Elf Atochem purchased R&H's interest in AtoHass and, in exchange for $27.5 million from R&H, assumed all duties that the R&H Plan owed to AtoHaas employees who transferred to Elf Atochem. (SMF ¶¶ 5-6; <u>see also</u> Pl. Ex. B at ARKP_488-89 ["Master Purchase and Sale Agreement" describing Elf Atochem's assumption of R&H Plan liabilities and obligations as part of the sale].) Elf Atochem amended its pension plan ("Elf Atochem North America, Inc. Retirement Benefits Plan" or "Elf Atochem Plan") to include language that mirrored the relevant provisions of the R&H Plan, including the promise of COLAs for monthly annuities and the option to take the pension in a lump sum. (SMF ¶¶ 6-8.) The Elf Atochem Plan promised that the pension payout to employees would be no less valuable than the pensions they would have received if they remained in the R&H Plan. (SMF ¶ 9.)

At the same time, the Elf Atochem Plan also added Appendix

N, which addressed COLAs further.[3] "The portion of an AtoHaas Employee's benefit attributable to his RandH Past Service Benefit shall be increased as of March 31st of each year subsequent to the later of such person's retirement or attainment of age 60." (Pl. Ex. C at ARKP_293.) Section N.7 continues: "The cost of living adjustments described above shall not apply, however, if the AtoHaas Employee (or, if applicable, the AtoHaas Employee's surviving spouse), has elected to receive benefits in the form of a single lump sum payment." (Id.)

Two more rounds of mergers and corporate restructuring in 2000 and 2003 resulted in Elf Atochem being renamed TotalFinaElf, and, later, Total, and Elf Atochem North America being renamed ATOFINA, and, later, Arkema, Inc.[4] (SMF ¶¶ 11-14.) The Elf Atochem Plan was renamed the ATOFINA Plan, and, later, the Arkema, Inc. Retirement Benefits Plan ("Arkema Plan"). (SMF ¶¶ 12, 15.) In other words, the Defendant Arkema Plan at issue in this case is the same as the Elf Atochem Plan, which originally added provisions to mirror the R&H Plan as part of the 1998 buyout of R&H's stake in AtoHaas. (Def. Br. at 8.) The Arkema Plan assumed the obligations of the R&H Plan to former AtoHaas

---

[3]   Plaintiffs again argue that there is no record evidence that the 1998 Elf Atochem Plan was provided to the Plaintiffs. (Pl. Opp'n at 13.) Any dispute as to the fact of receipt of the 1998 Plan is not material to these motions.

[4]   In 2004, Total announced it was "spinning off" ATOFINA and changed ATOFINA's name to Arkema, Inc. (SMF ¶ 14.)

employees who retired after April 1, 2005,[5] adopting the COLA provisions of the R&H Plan and adding Appendix N. (SMF ¶ 16, 19.)

The lead Plaintiffs were participants in the Arkema Plan. (SMF ¶ 15.) Shirley Lightfoot and Donald R. Hone were AtoHaas employees and received their R&H Plan lump sum payments from Arkema on November 1, 2009, and January 1, 2009, respectively. (Compl. ¶¶ 1-2.)

### B. __Williams v. Rohm & Haas Pension Plan__

In __Williams v. Rohm & Haas Pension Plan__, 497 F.3d 710, 711 (7th Cir. 2007), the plaintiffs, who were R&H employees who had received their lump sum payments, alleged in a class action that the R&H Plan "violated ERISA by failing to include a cost-of-living adjustment (COLA) in his lump sum distribution from the Plan. 29 U.S.C. § 1054(c)(3)." The Southern District of Indiana, by the Honorable Sarah Evans Barker, deciding a motion for summary judgment, held "that the terms of the Plan violated ERISA because the COLA was an accrued benefit as ERISA defines that term." __Id.__ Defendant R&H Pension Plan requested and received permission to file an interlocutory appeal, which the Seventh Circuit granted. (SMF ¶¶ 25-27.) The parties fully briefed the issue and the court held oral argument. (__Id.__ ¶ 28.) The Seventh

---

[5] When Total restructured and renamed ATOFINA as Arkema, the pension obligations of former R&H employees were divided among the Arkema Plan and the Total pension plan, based on the date of retirement. (SMF ¶ 16.)

Circuit affirmed the district court. Williams, 497 F.3d at 711.

The Seventh Circuit reasoned that "ERISA requires that any lump-sum substitute for an accrued pension benefit be the actuarial equivalent of that benefit" and that because COLAs are "inseparably tied to the monthly retirement benefit" that COLAs were part of the accrued benefit and not an ancillary or supplementary benefit. Id. at 712-13 (quoting Hickey v. Chicago Truck Drivers, 980 F.2d 465, 468 (7th Cir. 1992)). The Court concluded:

> Hickey held that a COLA applied to a defined benefit pension plan annuity is an accrued benefit under ERISA, and that holding is determinative in this case. The Plan, as administered, violates ERISA. 29 U.S.C. § 1054(c)(3). If a defined benefit pension plan entitled an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution.

Id. at 714.

R&H Plan sought, but the U.S. Supreme Court did not grant, certiorari. Rohm & Hass Pension Plan v. Williams, 552 U.S. 1276 (2008). The Seventh Circuit remanded the case to the district court for a determination of the value of the COLAs that were denied to pensioners. (SMF ¶ 32.) Before the case was decided, however, the parties settled for $180 million, and the district court approved the settlement. (SMF ¶¶ 34-35.)

## C. Procedural history

Ms. Lightfoot and Mr. Hone filed this action, individually

and on behalf of all others similarly situated on February 7, 2012. [Docket Item 1.] The Court entered a Consent Order on Class Certification, which certified a class defined as follows under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B) and (b)(2): "All former participants in the Rohm and Haas Pension Plan who have received or are eligible to receive a lump sum distribution of their pension from the Arkema Inc. Retirement Benefits Plan." [Docket Item 25 at 1.]

Plaintiffs filed this motion for partial summary judgment, seeking a declaration that COLAs are part of the accrued benefit as defined by the Arkema Plan and that the failure to include the actuarial equivalent value of COLAs in lump sum distributions violates ERISA. (Pl. Br. at 21.) Plaintiffs urge this result on the merits and, alternatively, argue that such an outcome is compelled by the doctrine of collateral estoppel, or issue preclusion, based on the Williams decision involving the similar provision of the Rohm & Haas Pension Plan in the Southern District of Indiana, which was affirmed by the Seventh Circuit. (Id. at 8.) Defendant opposes the motion and seeks summary judgment, arguing that (1) the claims are time-barred, (2) collateral estoppel does not apply and (3) COLAs are not "accrued benefits" under the Arkema Plan. (Def. Br. at 3-4.)

The Court heard oral argument on these motions. At the argument, the Court permitted Plaintiff to supplement the record

with a letter, marked by the Court as Exhibit P-1 [Docket Item 49-1], from a Towers Perrin consultant to ATOFINA, to show that, as late as 2000, there was uncertainty about whether COLAs must be added to lump-sum distributions. The Court granted Defendant leave of seven days to respond to the exhibit, and Defendant filed a letter response. [Docket Item 49.]

## III.  Standard of review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. Id. The court will view evidence in the light most favorable to the non-moving party and "all justifiable inferences are to be drawn in [that party's] favor." Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

When ruling on cross-motions for summary judgment, the court "must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." United States v. Kramer, 644 F. Supp. 2d 479, 488 (D.N.J. 2008) (citing Williams v. Philadelphia Housing Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560

(3d Cir. 1994), and <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 547, 587 (1986)).

## IV. Statute of limitations

ERISA contains a statute of limitations for claims alleging a breach of fiduciary duty (either three or six years)[6] but not for non-fiduciary claims. <u>See</u> <u>Miller v. Fortis Benefits Ins. Co.</u>, 475 F.3d 516, 520 n.2 (3d Cir. 2007) (noting this distinction and stating that, for non-fiduciary claims, courts apply the statute of limitations that otherwise would apply to the forum-state claim most analogous to the ERISA claim). In New Jersey, the "statute of limitations applicable to a 'recovery upon a <u>contractual</u> claim or liability' is six years." <u>Lavin v. Bd. of Educ.</u>, 90 N.J. 145, 149 (1982) (quoting N.J. Stat. Ann. § 2A:14-1) (emphasis in original). The parties appear to agree that this six-year statute of limitations applies in this non-fiduciary case.

The remaining task is to determine when Plaintiffs' claims accrued. Defendant argues that the claims accrued as early as 1994 and no later than 1998, because the plan documents, along with amendments and the 1994 SPD, clearly repudiated the notion that COLAs apply to lump-sum payments. (Def. Br. at 27-28.) Defendant argues that the Plaintiffs' claims are now time-barred,

_____

[6] <u>See</u> 29 U.S.C. § 1113 (setting limitations periods for fiduciary claims).

12

under <u>Miller</u>, 475 F.3d at 520-21, which held that a formal denial of benefits was not necessary for claims to accrue.

Thus, the Court must decide whether the language of the plan itself (possibly in conjunction with the 1994 SPD), without more, can constitute a clear repudiation of the COLA benefit, for statute of limitations purposes under ERISA.

Plaintiffs argue that, in this case, the language of the plan cannot and should not be held to be a clear repudiation. First, Plaintiffs deny that the plan documents clearly repudiate that lump-sum payments exclude COLAs. (Pl. Opp'n at 12-13.) Plaintiffs argue that the plan can be read to permit COLAs in lump sum distributions because the plan denied only "cost-of-living <u>increases</u>" to lump sum distributions. (<u>Id.</u> at 15) (emphasis in original). Plaintiffs also contend that holding the 1994 SPD or the plan documents themselves to be clear repudiations of COLAs would require plan participants to be watchdogs over their plans, contravening the Third Circuit's holdings on the matter. (Pl. Opp'n at 22-24.) "The average plan participant would literally know nothing of ERISA and what, if any, parts of the R&H Plan were illegal." (Pl. Opp'n at 23.) Plaintiffs continue: "It is unrealistic and unfair for the Court to hold that plan participants, often years before they must decide on how they will take their pension, must hire an attorney the moment they get an SPD or other document from the plan -- or

risk forfeiting the benefits ERISA entitles them to." (Id.)

The accrual date of a non-fiduciary claim is a matter of federal common law. Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005). In this Circuit, the claim accrues when benefits have been denied, but "a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known [to] the beneficiary." Miller, 475 F.3d at 520-21 (emphasis in original).[7] This clear repudiation rule is a refinement of the federal discovery rule, which provides that a claim accrues "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Dix v. Total Petrochemicals USA, Inc., No. 10-3196, 2012 WL 6005011, at *9 (D.N.J. Nov. 30, 2012), appeal docketed, No. 12-4585 (3d Cir. Dec. 28, 2012) (quoting Romero, 404 F.3d at 222).

The Third Circuit has stated that ERISA does not require "plan participants and beneficiaries likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses." Miller, 475 F.3d at 522 (quoting Romero, 404 F.3d at 224). At the same time, the Third Circuit "requires a plan beneficiary to be vigilant and failure to investigate an

---

[7] In Miller, the "cause of action to adjust benefits accrued upon [plaintiff's] initial receipt of the erroneously calculated award." Miller, 475 F.3d at 522.

erroneous benefit determination after receiving notice of a plan's calculation of benefits will not toll the statute of limitations." <u>Dix</u>, 2012 WL 6005011, at *10 (citing <u>Miller</u>, 475 F.3d at 523). The Third Circuit also has stated: "We do not believe that the accrual date in this case should derive from a bare assumption that benefit recipients are ill-equipped to safeguard their rights. Indeed, we require beneficiaries to safeguard those rights upon a denial of benefits, and this case provides no compelling reason to require less diligence after an award." <u>Miller</u>, 475 F.3d at 523.

In <u>Dix</u>, this Court analyzed the R&H Plan language, the 1994 SPD and the 1998 Appendix N, and noted in dictum that the language was "clear and is only susceptible to one reasonable interpretation: If an employee elects to receive the Rohm & Haas pension in the form of a lump sum, the employee foregoes receiving COLAs." <u>Dix</u>, 2012 WL 6005011, at *10. However, the Court did not hold that receipt of the plan language and the SPD was sufficiently clear to start the limitations clock. Instead, the Court held that the claim accrued "at the latest, on November 14, 2003, when Plaintiff can be presumed to have received the November 10, 2003 letter which notified Plaintiff of the final calculation of his lump sum benefit." <u>Id.</u> at *14.

Unlike in <u>Dix</u>, where the plaintiff received notice of the final calculation of his benefit, here the record contains no

evidence that Plaintiffs received similar notifications. Thus, for summary judgment on the statute of limitations to be entered in Defendant's favor, the Court must find that (1) the language is a clear repudiation made known to the Plaintiffs, and (2) requiring the Plaintiffs to safeguard their rights prior to any notification, award or denial of their benefits does <u>not</u> demand more than "reasonable diligence." <u>See</u> <u>Miller</u>, 475 F.3d at 522 ("The beneficiary should exercise reasonable diligence to ensure the accuracy of his award."); <u>Grasselino v. First Unum Life Ins. Co.</u>, No. 08-635, 2008 WL 5416403, at *4 (D.N.J. Dec. 22, 2008) ("The key inquiry is whether the plan participant had 'reasonable discovery of the actionable harm.'") (quoting <u>Miller</u>, 475 F.3d at 222).

Even if the language in the plan and the SPD ultimately is susceptible to only one meaning, that does not mean that the language clearly repudiates claims for purposes of ERISA to pensioners who may not be trained to parse such documents and who may be unaware that close scrutiny is warranted. Here, the relevant language of the plan is dense and scattered throughout the document and, as Plaintiffs demonstrate, some sections contain arguable ambiguity.[8] An employee who reads in the SPD

---

[8] Indeed, Exhibit P-1, submitted at oral argument, supports the claim that, as of November 8, 2000, there was arguable ambiguity in the COLA provisions of the document, at least as applied to disabled employees. Cynthia King, FSA, a consultant hired to examine the ATOFINA plan, reviewed the COLA provisions

that "the equivalent lifetime value of your pension is the same in all forms," [Docket Item 31-5 at ARK_370], as well as the Plan's language that the lump sum distribution shall be the "actuarial equivalent" of the benefit the participant would have received if he had not made the lump sum election, (Pl. Ex. C. at ARKP_251), is hardly on notice that the lump sum choice will not be as valuable as the monthly annuity choice. The Court is unwilling to hold that in this case -- absent some other event or notification that is roughly equivalent to an award or denial of benefits -- that the statute of limitations started to run solely because this arguably unclear and indisputably technical and nuanced plan language existed in paper form and was delivered to the class members.

The parties have not provided, and research does not reveal, any decision in this Circuit that has held that ERISA claims accrue when the plan is issued, based solely on the language contained in the plan documents or SPDs.[9] Such a ruling would require a plan participant to be a clairvoyant watchdog of the plan: to pour over the pension plan documents potentially years

_____

and stated "there is no clear guidance for this provision so we have proposed several options for your consideration . . . ." (Pl. Ex. P-1.)

[9] This is not a case where the plan documents at issue were provided to employees for the purpose of altering the plan or removing benefits that were known to employees and which employees believed they were due.

before contemplating retirement in order to identify problems
with the plans that may be relevant to a future circumstance. The
average plan participant exercising reasonable diligence might
not discover the differences between a monthly annuity and a lump
sum until that question became relevant in his or her life,
perhaps decades after a plan document or an SPD was issued. It
would seem manifestly unfair to expect a plan participant, upon
merely receiving a copy of the plan during the course of his or
her employment, to examine the option of the normal annuity
benefit versus a lump sum payment when the participant would not
be called upon to make that election until years in the future at
the time of retirement. ERISA does not place this onus on plan
participants, and neither does the Third Circuit. See Miller, 475
F.3d at 522; Romero, 404 F.3d at 224. Without evidence that
Plaintiffs were put on notice as to their pension award prior to
distribution, the claims here accrued when Plaintiffs received
their awards, and the claims are not barred by the statute of
limitations.[10]

## V.  Non-mutual offensive collateral estoppel

Collateral estoppel, or issue preclusion, "bars 'successive

---

[10]  Defendant has not made the argument that class members
who may have received their lump sum payment after April 1, 2005,
but before February 7, 2006 -- six years prior to the filing of
this action -- are barred by the statute of limitations.
Therefore, such an argument is waived and the Court need not
consider it.

litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment . . . .'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008). The doctrine applies when (1) the issue actually litigated in the prior adjudication was identical to the one presented in the later action, (2) there was a final judgment on the merits and the previous determination was necessary to the judgment, (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate in the prior action. See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006); Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 169 (3d Cir. 1999). Collateral estoppel applies even if the prior court determined a question of federal law erroneously. Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 576 (3d Cir. 2002).

Where, as here, the plaintiff seeks to use collateral estoppel offensively, the U.S. Supreme Court has directed district courts to use "broad discretion to determine when it should be applied." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 331 (1979)). In the Third Circuit, "the use of offensive collateral estoppel is 'subject to an overriding fairness determination by the trial judge.'" Hall v. AT&T Mobility LLC,

608 F. Supp. 2d 592, 600 (D.N.J. 2009) (quoting <u>Burlington N.</u>
<u>R.R. Co. v. Hyundai Merch. Marine Co., Ltd.</u>, 63 F.3d 1227, 1232
(3d Cir. 1995)).

Plaintiffs contend that the issue in this case -- whether
ERISA requires that the value of COLAs, which are promised to
annuitants, must be included in lump-sum distributions -- was
already decided <u>Williams</u>. The key inquiries for this Court are
(1) whether the issue is identical to the issue at <u>Williams</u>, (2)
whether Defendant is in privity with R&H, and (3) even if
collateral estoppel requirements are met, whether it would be
unfair to Defendant to apply estoppel.

### A. Whether the issues are identical

<u>Williams</u> held that the R&H Plan violated ERISA by failing to
include the actuarial value of COLAs in lump sums, and Plaintiffs
assert that "[t]his case involves precisely the same issue." (Pl.
Br. at 9.) Plaintiffs argue that because the Arkema Plan,
"pursuant to its contract with Rohm and Haas, incorporates the
benefit formula of the R&H Plan, including the COLAs" (<u>id.</u> at 9-
10), and because the <u>Williams</u> court held that COLAs are part of
the "accrued benefits," this Court should give preclusive effect
to <u>Williams</u>.

Defendant argues that "the issue here is not identical to
the issue in <u>Williams</u> due to events that were not germane to the
Rohm & Haas plan and its participants but that created and

reinforced the current parties' reasonable expectations." (Def. Br. at 29 n.5.) One notable difference between the Elf Atochem Plan (which became the Arkema Plan) and the R&H Plan is the addition of Appendix N, which states that the portion of an AtoHaas employee's benefit attributable to his R&H benefit increases on March 31 of each year (a COLA), but that "cost of living adjustments described above shall not apply, however if the AtoHaas Employee . . . has elected to receive benefits in the form of a single sum lump payment." (Pl. Ex. C. at ARKP_293.) Appendix N.9 describes how to calculate "Actuarial Equivalence for Lump Sum Payments." (Id.) Appendix N.2 redefines "Accrued Benefit" to be the greatest of three specified calculations. (Pl. Ex. C. at ARKP_291.)

As explained below in Part VI.B, this case does not turn on the Plan's language denying COLAs to lump sum pensioners. The key question is whether the actuarial equivalent of COLAs must be added to lump sum distributions if COLAs are promised as part of the annual benefit commencing at normal retirement age to annuitants. This is precisely the issue that was decided in Williams and none of the amendments to the plans disturbed the promise of COLAs to annuitants. Therefore, the issue to be decided here is identical to that in Williams.

**B. Whether Defendant is in privity with R&H**

Plaintiffs further argue that Defendant is in privity with

R&H because Defendant is "the successor in interest to the R&H Plan." (Pl. Br. at 11.) "Under any understanding of privity, the Arkema Plan is in privity with the R&H Plan on the issue here because: (a) the R&H Plan paid the Arkema Plan millions in trust for the benefit of the Class, (b) the Arkema Plan contractually assumed the duties of the R&H Plan to the Class, and (c) the Arkema Plan incorporated the R&H Plan benefit formula into the Arkema Plan for the benefit of the Class." (<u>Id.</u> at 12.) In their reply brief, Plaintiffs restate this point: "Arkema Plan's duties to plaintiffs under ERISA are dependent on 'successive relationships to the same right of property;' namely, the trust assets representing plaintiffs' R&H pensions." (Pl. Reply at 14.) The Arkema Plan "took R&H Plan trust assets, incorporated the R&H Plan's terms, and assumed the R&H Plan's obligations." (<u>Id.</u> at 14-15.) Thus, Plaintiffs argue that they assert "the same legal right" against Arkema that the <u>Williams</u> plaintiffs did in that case. (<u>Id.</u> at 15.)

Defendant contests that it is in privity with R&H. Defendant argues that preclusion should apply only "when a non-party controls or directs the previous litigation" (Def. Br. at 30), but this is a mischaracterization of the law.[11] Defendant denies

---

[11] The Supreme Court in <u>Taylor</u> stated that "a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered[,]" but that was merely one of six exceptions to "the rule against nonparty preclusion" and the list was "meant only to provide a framework

22

that it is a "successor in interest" to the R&H Plan and offers instead that it is a "successor in _obligation_," without articulating the significance of the distinction. (Def. Br. at 31.) Defendant reiterates that even if it were a successor in interest, it did not control the litigation and cannot be found to be in privity with R&H. (_Id._)

In _Taylor_, the Supreme Court identified several established exceptions to "the rule against nonparty preclusion." _Taylor_, 553 U.S. at 894; _see also_ _Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc._, 571 F.3d 299 (3d Cir. 2009) (analyzing the _Taylor_ exceptions). One exception provides that preclusion is justified when there is a "pre-existing 'substantive legal relationship[]' between the person to be bound and a party to the judgment. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."[12] _Taylor_, 553 U.S. at 894 (citations

_____

for our consideration of virtual representation, not to establish a definitive taxonomy." _Taylor_, 553 U.S. at 893. The Supreme Court cited with approval 18A Charles A. Wright, et al., Federal Practice & Procedure § 4448 (2d ed. 2002), which states that "[i]n some circumstances, persons holding successive interests in the same property or claim can preclude each other[,]" without any discussion of control of the litigation. § 4448 (referencing § 4462). Control of the prior litigation may be grounds for finding privity in some circumstances, but control is not a necessary element of privity.

    [12]  The _Taylor_ court also stated that, in limited circumstances, "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interest who [wa]s a party' to the suit." _Id._ However, the _Taylor_ court

omitted).

Although a successor in interest may be bound by a prior judgment in some circumstances, "[o]rdinarily a judgment is binding on a nonparty who took by transfer from a party _after_ judgment or while suit was _pending_, but is not binding on a nonparty who was involved in a transfer to or from a party _prior_ to institution of the action." 18A Charles Alan Wright, et al., Federal Practice and Procedure § 4462 at 658 (2d ed. 2002) (emphasis added) (citing _Oklahoma v. Texas_, 256 U.S. 70, 86 (1921), among others); Wright, Federal Practice and Procedure § 4448 at 329 (stating that "[i]n some circumstances, persons holding successive interests in the same property or claim can preclude each other" and referencing § 4462); _United States v. Schaeffer_, 245 B.R. 407, 414 (D. Colo. 1999) (quoting § 4462 and holding that a divorcing spouse is not bound by an earlier holding in an adversary proceeding when the proceeding was filed after the divorce was complete).

Here, the entity that became Arkema, Inc., and R&H parted ways in 1998, six years before the _Williams_ litigation commenced.

---

distinguished "adequately represented" from a more general concept of "virtual representation," stating that "representation is 'adequate' for purposes of nonparty preclusion only if (at a minimum)" special procedures protect the nonparties' interests in the prior litigation or there was "an understanding by the concerned parties that the first suit was brought in a representative capacity." _Id._ at 894-897. Here, there is no evidence of special procedures or an understanding between the parties about bringing suit in a representative capacity.

<u>Williams v. Rohm & Haas Pension Plan</u>, No. 04-cv-0078, slip op. at 9 (S.D. Ind. Dec. 22, 2005), ECF No. 51 ("Williams filed the instant lawsuit on April 2, 2004."). The record contains no evidence that the specter of the <u>Williams</u> litigation was visible to Defendant or pending at the time of the 1998 buyout or that, once litigation commenced, R&H was aware of the effects its litigation would have on Plaintiffs or Defendant here. The outcome urged by Plaintiffs would require a finding of privity between parties based on a transfer of property that occurred six years before litigation commenced. Although the Arkema Plan incorporated language to mirror the R&H Plan, the Arkema Plan is a document that does not necessarily depend on the interpretation of R&H Plan for its own administration. Plaintiffs provide no persuasive argument why Defendant should be bound by an interpretation of the R&H Plan issued so many years after the buyout, based only on the fact that Defendant made equivalent promises to its employees. The Court can identify no justification to abandon the general rule against nonparty preclusion in this case.

The substantive legal relationship between R&H and the entity that became Arkema did not contemplate an ongoing representative relationship between R&H and Arkema. Indeed, R&H paid millions of dollars to extinguish its obligations to the employees now seeking relief from Arkema. There is no evidence in

25

the record of a legal relationship between R&H and Arkema that would permit giving preclusive effect to litigation that commenced six years after the transfer of assets. Williams concerned neither the Arkema Plan nor these trust assets; the litigation involved employees of a separate company seeking distribution of funds held in separate accounts pursuant to separate pension plans of unrelated corporations that are administered separately. The legal agreement governing the transfer of assets between R&H and the entity that became Arkema forms no basis for a finding of privity under these circumstances.

If ever courts are hesitant to apply collateral estoppel,[13] caution should be exercised in a case like this, where neither party was actually involved in the prior action and no representative relationship was established with parties to Williams, and where it is unlikely that Defendant could have intervened in the prior action even if it had been aware of the litigation and wanted to protect its own interests.[14] Applying

---

[13] See Wright, Federal Practice & Procedure § 4448 (stating the general "rule that ordinarily nonparties are not bound" and observing "[s]ome substantial justification must be found to justify preclusion of a nonparty"); see also Jean Alexander Cosmetics, 458 F.3d at 248 ("the application of non-mutual offensive collateral estoppel presents a unique potential for unfairness").

[14] The class certified in Williams included "[a]ll former participants in the Rohm & Haas Pension Plan (the 'Plan') who received a lump sum distribution from the Plan which did not take

estoppel here would seem unfair to Defendant in these circumstances. The Court declines to apply non-mutual offensive collateral estoppel where there is no good basis for doing so and where the parties are not the same nor in privity with the Williams parties. Thus, Williams, in deciding the same issue, is precedent but is not preclusive upon Arkema. The Court will turn to the merits of the case.

## VI. Whether COLAs are accrued benefits under the Arkema Plan

On the merits, the primary question is whether COLAs are incorporated into the definition of "accrued benefit" under the Arkema Plan, within the meaning of ERISA.

### A. Parties' arguments

Plaintiffs argue the Arkema Plan violates ERISA, 29 U.S.C. § 1002 et seq., because

> (1) in exchange for participants' service, the Arkema Plan included an automatic COLA as part of their normal retirement benefit; (2) the COLA is an 'accrued benefit' as defined by ERISA, 29 U.S.C. § 1002(23), and the Internal Revenue Code, 26 U.S.C. § 411(a)(7); (3) the Arkema Plan failed to include the actuarial equivalent present value of the COLA in the class members' lump-sum distributions; and as a result, (4) the class members forfeited a portion of their accrued benefit and received less than the full present value of their benefit in violation of ERISA and the implementing Treasury Regulations.

---

into account a cost of living adjustment in calculating the lump sum distribution." Williams, No. 04-078, at 1 n.2. The class was certified on October 22, 2004. Id. Participants in the Arkema Plan, by definition, could not have "received a lump sum distribution" prior to April 1, 2005.

(Pl. Br. at 14-15.) Plaintiffs argue that the Plan promised COLAs as part of its benefit to annuitants, and ERISA requires "alternate forms" of payment to be the "actuarial equivalent" of that accrued benefit, citing 29 U.S.C. § 1054(c)(3) and 26 U.S.C. § 411(c)(3). (Id.) Plaintiffs add that the Arkema Plan itself provides that lump sums "shall be the Actuarial Equivalent of the benefit that the Participant would have received had he not made such an election." (Id. at 20) (citing Pl. Ex. C. at ARKP_251).

As additional support, Plaintiffs cite an IRS "Gray Book," which summarizes questions posed to the staff of the Treasury Department and the IRS at a meeting on February 10, 1994. (Id. at 18; Pl. Ex. D.) The document itself warns, however, that "this material does not represent the official position of the Treasury Department or the Internal Revenue Service or of any other governmental agency." (Pl. Ex. D.) In response to a question about COLAs and lump sums, staff members responded that "an automatic cost-of-living provision is an integral part of the participant's accrued benefit and, therefore, must be taken into account when determining amounts payable under optional forms of benefit." (Id. at 18; Pl. Ex. D.) An IRS Announcement from 1995 states that when a plan provides a COLA that is a function of the Consumer Price Index (CPI), "a participant receiving a benefit in the form of a single sum must receive projections of the CPI increases (based on reasonable actuarial assumptions) as part of

28

a single sum . . . ." (Id.; Pl. Ex. E.)

Plaintiffs contend that "every court to consider the issue has found that COLAs promised to annuitants are accrued benefits and their actuarial value must be included in lump sums." (Id. at 19) (citing Williams; Hickey, 980 F.2d at 470; Kohl v. Ass'n of Trial Lawyers of Am., 183 F.R.D. 475, 483 (D. Md. 1998); Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust, 134 F. Supp. 2d 189, 200-01 (D. Mass. 2001); and Zebrowski v. Evonik Degussa Corp. Admin. Comm., No. 10-542, 2012 WL 3962670 (E.D. Pa. Sept. 11, 2012)).

Defendant responds that, under ERISA, an "accrued benefit" is "determined under the plan and, except as provided in section 1054(c)(3) of this title, [is] expressed in the form of an annual benefit commencing at normal retirement age." (Def. Br. at 13, quoting 29 U.S.C. § 1002(23)(A).) In other words, the "statutory definition of 'accrued benefit' incorporates the definition of 'accrued benefit' under the individual plan." (Def. Br. at 14-15.) Defendant contends that the definition of "accrued benefit" in the Arkema Plan does not include COLAs, because the definition of accrued benefit references calculations set forth in Article VII and Schedule G, which make no mention of COLAs. (Id. at 17, citing Pl. Ex. A at ARKP_383.) Defendant asserts that the lump sum should be the actuarial equivalent of the monthly annuity calculated under Article VII of the Arkema Plan, and the Plan is

29

clear that COLAs are not available to those who opt for lump sums. (Id. at 17-18.)

Defendant further argues that Plaintiffs misinterpret ERISA when they claim that § 1054(c)(3) defines any benefit paid annually as part of the accrued benefit; to the contrary, Defendant argues that the language of § 1054(c)(3) refers only to the "accrued benefit," which is defined under the plan. (Id. at 21.) COLAs are not an accrued benefit, Defendant argues, but rather "a retirement-type subsidy," and that the Plan is within its rights to reserve that subsidy only for annuitants. (Id. at 22.) Defendant contends that a contrary holding would undermine ERISA's core principle that private plans, not the government, dictate the level of benefits. (Id. at 23.)

Defendant distinguishes the cases Plaintiffs cite.[15] Defendant argues that in three of the cases, the plan language at issue was ambiguous as to COLAs or expressly included COLAs in the plan's definition of accrued benefits. In Kohl, the court found that COLAs applied in the face of ambiguity of the plan language, and language was construed against the drafter. (Id. at 16.) See Kohl, 183 F.R.D. at 480 ("The language in the Plan is unclear as to whether a COLA applies to a lump sum payment or not."). In both Hickey and Laurenzano, Defendant suggests that

---

[15] Defendant also argues that the IRS documents are inapposite to "the situation here." (Def. Br. at 21.)

the courts found that the COLAs were part of the accrued benefits according to the express terms of the plans.[16] (Id.) See Hickey, 980 F.2d at 466, 469-70 ("defendants amended the Plan to add a COLA to all retirement benefits"). Defendant argues that the Arkema Plan clearly excludes COLAs from lump sum payments, unlike the plans in the cited cases. (Id. at 17.)

**B. Discussion**

The Court begins, as it must, by examining the relevant statutory language. ERISA provides: "The term 'accrued benefit' means (A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age[.]" 29 U.S.C. § 1002(23). Section 1054(c)(3), in turn, provides that:

> if an employee's accrued benefit is to be determined as
> an amount other than an annual benefit commencing at
> normal retirement age, or if the accrued benefit
> derived from contributions made by an employee is to be
> determined with respect to a benefit other than an
> annual benefit in the form of a single life annuity
> (without ancillary benefits) commencing at normal
> retirement age, the employee's accrued benefit . . .
> shall be the actuarial equivalent of such benefit or
> amount determined under paragraph (1) or (2).

---

[16] Defendant misreads Laurenzano. In that case, the Plan expressly amended the plan to add COLAs to lump sum distributions only after the plaintiff ceased employment. Laurenzano, 134 F. Supp. 2d at 192. At all times during Laurenzano's employment, the plan provided for COLAs and the option of a lump sum distribution but "excluded COLA payments from the calculation of the lump sum distribution." Id. at 192-93.

29 U.S.C. § 1054(c)(3)[17]; see also 26 U.S.C. § 411(c)(3) (same
language). In general terms, these provisions of ERISA and the
Internal Revenue Code require that the value of a lump sum
benefit must be the actuarial equivalent of the accrued benefit
determined under the plan for the same individual if received in
the form of an annual benefit, with certain exceptions not
relevant to this case. The IRS regulation on this point states
concisely that the "present value of any optional form of benefit
cannot be less than the present value of the normal retirement
benefit . . . ." Treasury Reg. 1.417(c)-1(d).

The U.S. Supreme Court has stated that ERISA was enacted not
to dictate retirement benefits but to ensure that, once promised,
pensions benefits will be distributed according to the
pensioners' reasonable expectations. Cent. Laborers' Pension Fund
v. Heinz, 541 U.S. 739, 743 (2004) (stating that the purpose of
ERISA is to "mak[e] sure that if a worker has been promised a
defined pension benefit upon retirement . . . he actually will
receive it," quoting Lockheed Corp. v. Spink, 517 U.S. 882, 887

_____

[17] Section 1054(c)(1), referenced in the provision quoted
above, provides: "an employee's accrued benefit derived from
employer contributions as of any applicable date is the excess
(if any) of the accrued benefit for such employee as of such
applicable date over the accrued benefit derived from
contributions made by such employee as of such date." Section
1054(c)(2)(B), discussing defined benefit plans states in
relevant part: "the accrued benefit derived from contributions
made by an employee as of any applicable date is the amount equal
to the employee's accumulated contributions expressed as an
annual benefit commencing at normal retirement age . . . ."

(1996)). As the Supreme Court recently reiterated, "ERISA's principal function" is "to 'protect contractually defined benefits.'" U.S. Airways, Inc. v. McCutchen, 133 S. Ct. 1537, 1548 (2013) (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985)). ERISA focuses on "what a plan provides," and the statutory scheme "'is built around reliance on the fact of written plan documents.'" Id. (quoting Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995)). See also Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511 (1981) ("That the private parties, not the Government, control the level of benefits is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA.")

However, accepting that ERISA protects plan-defined benefits and that the accrued benefit is defined by the terms of the plan leaves unanswered the question of where in the plan the Court should look to determine the accrued benefit within the meaning of ERISA and the Internal Revenue Code. Defendant would have the Court look only to the section expressly labeled as the definition of "accrued benefit" by the plan's drafters. Plaintiffs, by contrast, urge the Court to consider the plan as a whole to see what an annuitant was promised and is entitled to receive, as a consequence of the participant's service, as an annual benefit upon retirement and to deem that total benefit the accrued benefit defined by the plan. According to Plaintiffs'

analysis, if the Arkema Plan promises COLAs to annuitants, and COLAs are part of the benefit earned by employees and included in the annual benefit paid to annuitants commencing at normal retirement age, then ERISA requires that the actuarial equivalent of that benefit -- COLAs and all -- be offered to those who choose the lump sum distribution. Both parties' definitions of accrued benefit can be said to be "determined under the plan." § 1054(c)(3). Thus, this determination turns on whether the plan may dictate the accrued benefit by so labeling a particular definition, or whether the accrued benefit is the annual benefit promised to annuitants, including the promise of automatic COLAs.

Although not bound to enforce the judgment in Williams, the Court is persuaded by the reasoning of the Seventh Circuit and other courts which have taken a similar approach. These cases compel the conclusion COLAs are part of the accrued benefit of the Arkema Plan and the R&H Plan, because they are part of the annual benefit commencing at normal retirement age. See Williams, 497 F.3d at 712-714. In Williams, the litigants made the same arguments the parties do here: R&H urged the court to interpret "accrued benefit" as expressly defined by the plan, and plaintiff Williams argued that the "accrued benefit" "is that benefit a participant would be entitled to if he chose to receive it in the form of a single-life annuity." Id. at 712-13. The Seventh Circuit, following its previous decision in Hickey, 980 F.2d at

34

468, stated that "[t]he term 'accrued benefit' has a statutory meaning, and the parties cannot change that meaning by simply labeling certain benefits as 'accrued benefits' and others, such as the COLA, as 'supplementary benefits.'" Williams, 497 F.3d at 713. Both Hickey and Williams concluded that a COLA "applied to a defined benefit pension plan annuity is an accrued benefit under ERISA . . . ." Id. at 714 (citing Hickey).

It is no response, as Defendant advances, to argue that in relying on Hickey, the Williams court "failed to acknowledge a major and fundamental distinction between the facts and issue presented in Hickey and Williams" -- and, by extension, this case: "in Hickey, the COLA qualified as an accrued benefit under the terms of the plan itself[.]" (Def. Opp'n at 18.) Defendant maintains that the Williams court "was wrong when it determined that it had already decided the same issue in Hickey" and that Hickey is inapposite on its facts to this case. (Id. at 19.) But in neither Seventh Circuit case did the court's decision turn on the language of the plans, except to the extent that in both cases the plans promised COLAs to annuitants in annual benefits. Both Hickey and Williams soundly concluded that if COLAs were included as part of the annual benefit to annuitants, and if the plan provides an option for a lump sum distribution, ERISA required the actuarial equivalent value to be added to lump sum distributions, regardless of whether the plans themselves

35

promised COLAs to lump sum pensioners.

By ruling in <u>Williams</u> that the accrued benefit was not defined solely by what was so labeled in the R&H Plan, the Seventh Circuit affirmed the analysis of the Southern District of Indiana, which offered more support for the same conclusion. The district court noted legislative history which informed the term "accrued benefit" and supported a reading that a COLA is an accrued benefit. <u>Williams</u>, No. 04-078, at 21. That history states that an

> "accrued benefit . . . is not to include such items as the value of the right to receive benefits commencing at an age before normal retirement age, or so-called social security supplements which are commonly paid in the case of early retirement age but then cease when the retiree attains the age at which he becomes entitled to receive social security benefits . . . ."

<u>Williams</u>, No. 04-078, at 21 (quoting H.R. Rep. No. 93-807, at 60 (1974)), <u>reprinted in</u> II Legislative History at 3180); <u>see also</u> <u>Hickey v. Chicago Truck Drivers</u>, No. 88-8696, 1989 WL 86768, at *1-*2 (N.D. Ill. June 7, 1989) (quoting this legislative history and concluding that a "COLA is an accrued benefit: its primary purpose is to provide retirement income, it commences only at retirement, and it is not a benefit generally transferable to succeeding employers"); <u>Hickey</u>, 980 F.2d at 468 (quoting the district court's discussion and conclusion with approval). The Southern District of Indiana also cited a case from the Third Circuit, <u>Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan</u>,

854 F.2d 1516, 1524 (3d Cir. 1988), for the proposition that the term accrued benefit "refers to those normal retirement benefits that an employee has earned at any given time during the course of employment." Williams, No. 04-078, at 18. See Ashenbaugh, 854 F.2d at 1524 ("an employee's accrued benefit at any particular point in time is what a fully vested employee would be entitled to receive under the terms of the plan if employment ceased at that particular point in time"). The court reasoned that "any Plan definition of 'accrued benefit' depends on the 'annual benefit commencing at normal retirement age.'" Williams, No. 04-078, at 26 (citing Laurenzano, 134 F. Supp. 2d at 200). The court concluded that "if the COLA is part of the annuity (and it is), then ERISA requires it to be included in the Class's lump sum distributions." Id. at 28.

Other courts have reached similar conclusions. See, e.g., Laurenzano, 134 F. Supp. 2d at 191 ("If a defined benefit plan normally provides retirement benefits in the form of a life annuity that includes a cost-of-living adjustment ("COLA"), must a lump sum distribution in lieu of the annuity include the present value of the projected COLA payments? This Court holds that it must."); Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan, 750 F.2d 1458, 1464-65 (9th Cir. 1985) (holding that "living pension benefits" are accrued benefits). Most recently, the Northern District of Oklahoma considered

whether a pension plan violated ERISA when it offered COLAs to
annuitants but not to those who took a lump sum. Pikas v.
Williams Cos., Inc., 903 F. Supp. 2d 1219, 1221 (N.D. Okla.
2012). The court adopted the reasoning of Hickey, Williams and
Laurenzano, and stated that "any annuitant at normal retirement
age will receive a set payment that will increase according to a
COLA throughout the annuitant's lifetime. That is the accrued
benefit." Id. at 1225. The court rejected arguments that the COLA
was an ancillary benefit or a retirement-type subsidy:

> The COLA is not a supplemental benefit to some retirees
> based on contingent circumstances that may occur before
> normal retirement age, but continue after normal
> retirement age. The COLA affects all annuitants based
> on contingent circumstances and only occurs after
> normal retirement age. The contingent nature of the
> COLA amount is not enough to transform this accrued
> benefit into a retirement-type subsidy. Additionally,
> the COLA commences at normal retirement age even though
> it does not change the annuity amount until the year
> after retirement.

Id. at 1226 (citing 26 C.F.R. § 1.411(d)-3(g)(6).) The court held
that "[b]ecause the COLA is part of the statutorily-defined
accrued benefit -- and not a retirement-type subsidy -- ERISA
requires the COLA be accounted for in the lump sum payment."
Id. at 1227.

No other interpretation would comply with § 1054(c)(3), §
1002(23) and Treasury Regulation 1.417(e)-1(d), which states that
the "present value of any optional form of benefit cannot be less
than the present value of the normal retirement benefit . . . ."

Adopting Defendant's definition of accrued benefit would result in lump sum distributions that are less than the actuarial equivalent of the "annual benefit commencing at normal retirement age" for annuitants, § 1002(23)(A), because the annual benefit commencing at normal retirement age automatically includes COLAs. Defendant's definition also would permit drafters of pension plans to thwart the dictates of Congress. See Laurenzano, 134 F. Supp. 2d at 199 ("The problem with Blue Cross's argument is that it would permit the terminology found in a retirement plan to defeat the intent of Congress.") Therefore, the actuarial equivalent of the COLAs must be added to lump sum distributions. A contrary result would violate ERISA.

If the Arkema Plan, which adopted portions of the R&H Plan, promises COLAs to annuitants, then the Arkema Plan violates ERISA when it denies the actuarial equivalent of the COLAs to lump sum pensioners. There is no dispute that these plans promise COLAs to annuitants. Article XV of the R&H Plan promises that "any participant age 60 or older who has retired from the Company, . . . who is receiving monthly payments, shall be entitled to an annual Cost-of-Living Adjustment . . . ." (Pl. Ex. A at ARKP_427) (emphasis added). Appendix N of the Arkema Plan mandates that the "portion of an AtoHaas Employee's benefit attributable to his RandH Past Service Benefit shall be increased as of March 31st of each year subsequent to the later of such person's retirement or

attainment of age 60." (Pl. Ex. C. at ARKP_293) (emphasis added).
Defendant admits that the "R&H Plan promised the Class that when
they retired the monthly annuities to which they were entitled
would be adjusted every year to reflect changes in the cost-of-
living." (SMF ¶ 3; Def. Resp. to Pl.'s Statement of Undisputed
Facts [Docket Item 31-6] ¶ 3.) There is no qualifying language in
the plans to suggest that COLAs may be denied to annuitants. The
plans also give pensioners the option to choose to receive the
benefit distributed in a lump sum, rather than as an annuity.
(Pl. Ex. A at ARKP_419; Pl. Ex. C at ARKP_293.) ERISA dictates
that the lump sum be "the actuarial equivalent" of the accrued
benefit. The Arkema Plan does, too: "Any alternate form of
benefit elected by the Participant shall be the Actuarial
Equivalent of the benefit that the Participant would have
received had he not made such an election." (Pl. Ex. C. at
ARKP_251.) Therefore, Defendant violated ERISA when it did not
include the actuarial equivalent of COLAs in the lump sum
payments.

Defendant's argument that COLAs are ancillary benefits or
retirement-type subsidies is unavailing. See Bellas v. CBS, Inc.,
221 F.3d 517, 532 (3d Cir. 2000) ("unpredictable contingent event
benefits that provide greater than the actuarially reduced normal
retirement benefit are retirement-type subsidies, and therefore
are accrued benefits under section 204(g), if the benefit

continues beyond normal retirement age"). The COLAs here are not

discretionary but are earned as a result of service. <u>See</u>

<u>Williams</u>, No. 04-978, at 23-24 n.9 (distinguishing

discretionarily granted benefits from accrued benefits). COLAs

under the Arkema Plan vest at retirement and are compounded

annually based on the cost of living but are not to exceed 3

percent. The plan as a whole guarantees this benefit to an

annuitant. That makes the COLAs part of the accrued benefit.

<u>See</u> <u>Ashenbaugh</u>, 854 F.2d at 1524 (stating that the accrued

benefit is what a fully vested employee would be entitled to

receive).[18] To hold that COLAs are merely a subsidy would be to

say that pension benefits are "a mere gift promise, revocable at

the employer's whim." <u>Laurenzano</u>, 134 F. Supp. 2d at 201. Rather,

COLAs are "integral to the 'annual benefit commencing at normal

retirement age -- the 'accrued benefit.'" <u>Id.</u>; <u>see</u> <u>also</u> <u>Williams</u>,

497 F.3d at 713 (citing <u>Hickey</u> and legislative history to

distinguish accrued benefits from ancillary benefits and

concluding that COLAs are "inseparably tied to the monthly

---

[18] Defendant argues that <u>Ashenbaugh</u> supports its argument
because the Third Circuit concluded that an early retirement
befit was a subsidy, not an accrued benefit, by looking at the
terms of the plan. (Def. Opp'n at 22.) However, the COLAs in this
case are different from the early retirement benefit in
<u>Ashenbaugh</u> because "a participant does not become entitled to any
benefit under the Thirty-Year Retirement provisions [the early
retirement benefit] until the specified conditions of those
provisions are met . . . ." <u>Ashenbaugh</u>, 854 F.2d at 1518. Here,
COLAs are automatic to annuitants.

retirement benefit as a means for maintaining the real value of the benefit"); Pikas, 903 F. Supp. 2d at 1226 ("The COLA is not a supplemental benefit").

This Court's previous decision in Dix is not inconsistent with this result. Defendant suggests that the Court's analysis of the R&H Plan language in Dix compels the conclusion that COLAs are not part of the accrued benefit. (Def. Opp'n at 9, 24, quoting Dix, 2012 WL 6005011, at *10, *13.) The argument is misplaced. First, the Court made no such holding in Dix. That case turned on a statute of limitations defense, and the Court held that the plaintiff's claim accrued no later than the date on which he was actually informed of the final determination of his lump sum payment. Dix, 2012 WL 6005011, at *14. Second, the Court's analysis of the language of the plan was for the purpose of determining when the plaintiff's claim accrued, not whether the language violated ERISA. In other words, in analyzing the clarity of the plan's rejection of COLAs to lump sum pensioners, the Court considered whether the language itself should have put the plaintiff on notice that he had a possible claim against the plan. The Court did not so hold, and the Court certainly did not hold that COLAs were not part of the accrued benefit within the meaning of the ERISA statute. In fact, the Court's analysis of the plan's rejection of COLAs to lump sum pensioners underscores the disparate treatment of annuitants and other pensioners, which

is what ERISA expressly prohibits, as discussed above.

Therefore, partial summary judgment will be granted in favor of Plaintiffs and Defendant's motion for summary judgment will be denied.

## VII. Conclusion

This action is not barred by the statute of limitations and collateral estoppel does not apply in this case. On the merits, the Court holds that COLAs are part of the accrued benefit, as defined by the Arkema Plan and within the meaning of ERISA, and, when the plan offers the option of a lump sum distribution, the actuarial equivalent value of COLAs must be included in lump sum distributions. The Plan therefore violates ERISA because it fails to provide to lump sum participants the actuarial equivalent of the accrued benefit including COLAs to which monthly annuitants are entitled under the Plan upon their retirement. Accordingly, the Court will enter partial summary judgment for Plaintiffs and deny summary judgment for Defendant. An accompanying Order will be entered.

**June 27, 2013**            **s/ Jerome B. Simandle**
Date                         JEROME B. SIMANDLE
                             Chief U.S. District Judge